## In Re Anonymous No. 68 D.B. 85

Disciplinary Board Docket No. 68 D.B. 85.

## REPORT OF THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

O'DOUGLAS, *Member,* September 4, 1986—Pursuant to Pennsylvania Rule of Disciplinary Enforcement 208(d) [relating to review and action by the Disciplinary Board of the Supreme Court of Pennsylvania (board)], the board submits the following report and order with respect to the above proceeding.

## I. SUMMARY OF THE CASE

Respondent was admitted to practice law in the Commonwealth of Pennsylvania on March 26, 1969.

On September 4, 1985 a petition for discipline was filed charging respondent with violating the following Disciplinary Rules of the Code of Professional Responsibility:

1. D.R. 1-102(A)(4), dealing with conduct involving dishonesty, fraud, deceit or misrepresentation;

2. D.R. 1-102(A)(5), dealing with conduct that is prejudicial to the administration of justice; and

3. D.R. 1-102(A)(6), dealing with conduct that adversely reflects on a lawyer's fitness to practice law.

Respondent and the Office of Disciplinary Counsel stipulated to a violation of D.R. 1-102(A)(6) and hearing committee [   ] found a violation of D.R. 1-102(A)(4) and recommended both a six-week suspension and a public censure. D.R. 1-102(A)(5) was not found to have been violated.

The pertinent facts are as follows:

On January 7, 1985, the United States Attorney filed a four-count information against respondent charging him with four counts of willful and knowing failure to file income tax returns for calendar years 1978, 1979, 1980 and 1981 in violation of 26 U.S.C. §7203, a misdemeanor.

On the same day, January 7, 1985, respondent appeared before U.S. District Judge [A] and pleaded guilty to Count 4, relating to calendar year 1981, thereby admitting that he had taxable income that year and that he had willfully and knowingly failed to file a tax return reporting that income. Judge [A] sentenced repsondent to: one year imprisonment,

execution of which was suspended; probation for a period of two years; residence at and participation in the program of [B] Community Treatment Center for a period of six months; and, the payment of a fine in the amount of $10,000. Counts 1, 2 and 3 of the information were then dismissed.

Respondent was a paper runner for [C] during the three years he attended [ ] Law School. Following his graduation in 1968, he joined the firm. He became a partner in the firm in 1974, and rose to the number 11 partner in a firm of 70 attorneys.

He had married on February 4, 1967. Three children were born of this marriage: a daughter, who is now 18, a son, 16, and a son, 13. There was a separation in 1976. It was a stormy one. His wife and children reside in the family home, and respondent paid all of the bills. At one point his wife hid his car for a nine-month period. The separation had an effect on his law practice. In his frustration, he made the foolish mistake of not filing a federal tax return for the years 1978, 1979, 1980, and 1981. Finally, in 1981, his wife took the children to [N] to live. There was a subsequent divorce.

Respondent went from the federal building to tell his partners for the first time what he had done. There was a partnership meeting. He was asked to resign his partnership, which he did. He was permitted to remain as an associate.

Respondent began living at the aforesaid half-way house. It was dormitory living with five or six beds to a room. Most of the other men there were federal prisoners from various penitentiaries, who were nearing the end of their terms for drug-related charges. Respondent kept his clothes at the [D] Club. He would go there every morning at 7 a.m. to exercise, take a steam bath, shower, shave, dress, and go to the office. He would return to the [D] Club

in the evening to exercise, shower, and return to the half-way house at 9 p.m., where he was subject to random testing for drugs and alcohol.

Respondent's sister, who teaches psychology at the University of [ ], has done extensive counseling with him.

Respondent's being an associate in the firm was not working out. The other associates were wondering where they stood in advancement in relation to him. The firm of [C] was doing medical-malpractice defense work for the [E] Insurance Company that insures physicians [E] and for [F] Insurance Company. In early May of 1985, [G], Esq., and [H], Esq., met with [I], Esq., of the [O] firm of [J], who also represented these insurance carriers. [I], Esq., interviewed respondent for five hours, and then offered him a position with his firm, [J].

When Judge [A] was informed that respondent would no longer be in the firm of [C], that the $10,000 fine was being paid, that an agreement had been reached with Internal Revenue for the repayment of $144,000 in back taxes, interest and penalty, and that respondent had been offered the aforesaid position with [J], Judge [A] terminated the requirement of living in the half-way house and the probation.

Respondent now lives in an apartment at [ ] Street in [0]. Other than having his sons stay with him for two weeks in the summer of 1985, he knows very few people there, and works from 8 a.m. to 8 p.m.

[K], Esq., testified before the hearing committee to his high regard for respondent and his abilities as a trial lawyer, as did Honorable [L], the former Calendar Judge of [P] County. [M], Esq., was present to

testify, but was excused as being cumulative in the interest of saving time.

[I], Esq., testified that one of the reasons he hired respondent was that he had been through a divorce himself, and that he was aware that a lot of stupid things cross your mind during that stressful period. He went on to testify that respondent is the third most experienced trial lawyer in their firm of 17 lawyers. He has checked with every judge in the suburban [O] area, before whom respondent has gone to trial. All these judges are extremely high in the compliments of how well respondent is prepared. [I] said he did not know what he would do in the event of a long suspension. He put it very well:

"If he is suspended, he is out of the office. It is my understanding that is what the Canons require.

"You must terminate your relationship with him and he must leave. You can't provide him with an office. You can't keep his name on the stationery. You can't keep him. You are to provide no aid and comfort, I suppose, is the expression and I would not."

## II. DISCUSSION

As set forth in disciplinary counsel's memorandum, our board has stressed that each case of failure to file a tax return must be taken on an ad hoc basis, the reasons given by respondent, and the facts surrounding the infraction must be considered.

These infractions were made by respondent during his period of marital turmoil. He still refers to her as his wife even though they are divorced.

Respondent has paid dearly for the aforesaid infractions:

He was publicly disgraced in the [Q] newspapers and news media at the time of his guilty plea.

He was asked to resign his partnership, after being with [C] for 17 years.

He lived from 9 p.m. to 7 a.m. in a dormitory-style half-way house with federal prisoners from January 8 to May 8, 1985.

In May of 1985, he was told that he had to leave the firm of [C].

He had to leave [Q], where he had lived since his birth on October 5, 1943.

He lives in an apartment in [O], a city where he knows very few people.

He is paying back $144,000 in back taxes, interest and penalties. He has paid the $10,000 fine.

In the opinion of the board, he has suffered enough.

## III. RECOMMENDATION

For the foregoing reasons, it was determined by the board, that respondent, [    ], be given a private reprimand before the board and pay the costs incurred with this action.

Mr. Schwartzman dissents and would recommend a public censure.

## ORDER

NIX, *C.J.*, And now, this November 10, 1986, upon consideration of the report of the Disciplinary Board dated September 4, 1986, and the petition for review filed by the Office of Disciplinary Counsel, the petition for review is denied, and it is ordered that [respondent] be subjected to public censure by the Supreme Court at the session of court commencing January 20, 1987, in Philadelphia. It is further ordered that respondent shall pay costs, if any, to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.